DELLA A. SHARP, a Person of Unsound Mind, By JOHN A. MARRS, Guardian of Her Person and Curator of Her Estate, Appellant, v. CITY OF CARTHAGE.—5 S. W. (2d) 6.

Division One, April 11, 1928.

*George V. Farris, A. E. Spencer, Hugh Dabbs* and *J. D. Harris* for appellant.

*S. I. Barton* and *Frank R. Birkhead* for respondent.

LINDSAY, C.—This is a suit for personal injuries. The plaintiff fell, when she stepped into a depression or hole in the pavement on Fourth Street, in the city of Carthage. She alleged injuries to her right ankle and leg, causing great pain, resulting in inability to walk without crutches or a cane, and entailing upon her large expense. She asked damages in the sum of $15,000, and the verdict was in favor of defendant. After the appeal was taken the plaintiff was ad-

judged to be a person of unsound mind and the cause has been revived in the name of her guardian.

Fourth Street runs east and west along the south side of the court house square. The plaintiff for twenty-five years had been a deputy in the office of the circuit clerk, and at the time was on her way to that office in the court house, at about 8:30 in the morning of November 10, 1922. She went twice daily to the office, sometimes by the south entrance, but more often by the west entrance. She could see this street from the office. Some years before her injury, Fourth Street had been paved with two inches of asphaltum, laid over a concrete base. The hole, or depression complained of, was two or three feet north of the south curb line of Fourth Street, and not exactly opposite the south entrance of the court house, but was slightly west of the center of the block. The testimony showed that for several years the owner of a near-by building had been in the habit of hitching his horse to a telephone pole at the south curb, and the horse, by pawing upon the asphalt paving, especially during warm weather, had caused this depression, which was about twenty-four inches long, and eighteen inches wide. The depression extended down to the concrete base, at least in the center. Plaintiff's evidence tended to show that the rim of the depression was somewhat abrupt. Other evidence tended to show that it sloped gradually from the rim toward the center. Plaintiff's testimony was that it was about three inches deep in the center, and defendant's testimony was that it was about two and one-fourth inches deep. Upon the occasion in question the plaintiff walked eastward from the southwest corner of the square, and as she neared the place of the hole, or depression, was engaged in talk with a Mrs. Harrington, and they stopped for a moment on the sidewalk near the hole or depression, to finish their conversation. Plaintiff then started to go to the court house, the south entrance of which was almost opposite, but a little east of where she stood, so that she stepped off on a slightly diagonal line. She testified that there were some automobiles parked at the curb a little to the east of where she was, but that there was no obstruction to pedestrians passing from the sidewalk to the pavement near the telephone post that has been mentioned, and therefore near the hole in the pavement. She describes her action in direct examination as follows: "Mrs. Harrington stood there talking to me and we finished our conversation there. I started to go to the court house. I stepped down on the pavement and it looked perfectly level, but it was completely covered up from offals from the horses and debris, and the street had not been swept. I looked around and saw the cars, and I looked back and took one step forward and stepped on that pavement. This foot turned around here and crumpled under me." In another place she testified that the pavement looked safe, perfectly level, only that it was covered with offal, paper and litter of the

street, which had not been swept; that she took one step on the pavement, and her right foot in the next step came upon the abrupt edge of the depression, causing her to fall. Also, she said: "It looked safe. I saw the dirt and filth and I didn't want to get my shoes dirty. It didn't look like anything but papers and cartons." The plaintiff said she weighed about 190 pounds.

The defendant introduced some evidence as to the street having been swept. Mrs. Harrington testified that she had walked a few steps and turned, at plaintiff's outcry, and helped her up; that plaintiff's clothes were dusty, but that she remembered nothing of the depression and did not observe the condition of the street and had no recollection of the filth on the street on that morning. Art Harrison called by plaintiff, testified he was standing in front of the place when plaintiff fell and helped to pick her up; that he had seen people stumble at that place before, and had called the city marshall's attention to it; that he would not say whether there was any dirt or debris in the hole at the time plaintiff fell, but that at other times he had seen cigar stubs, wrappers and other trash in it.

Plaintiff herself testified she did not know the depression was there. That it had been there for a year or two was not disputed. The defendant caused a reproduction of the form and depth of the depression to be made of plaster paris, which was introduced in evidence, to show exact outlines, depth and character of the depression, and that it had gradually sloping sides.

The first assignment of error is that the verdict is against the weight of the evidence, and that the court did not exercise a sound  discretion in refusing to grant a new trial upon that ground. The defendant's answer, in addition to a general denial, pleaded contributory negligence on the part of plaintiff, in failing to use ordinary care to observe where she was going, and to see the alleged hole or depression. We have referred to the plaintiff's testimony, that when she started to go upon the pavement, she looked and that it looked level, and that because of offal and litter she did not discover the depression; and also to the other testimony upon that point tending to show the contrary.

It is the peculiar province of the trial court to grant a new trial upon the ground that the verdict is against the weight of the evidence. Where there is conflict in the evidence upon material points, or, where different conclusions may be drawn from the evidence, the question of negligence, and of contributory negligence, is for the jury. [Mauerman v. Siemerts, 71 Mo. 101; Huhn v. Railroad, 92 Mo. 440; Dowell v. Guthrie, 116 Mo. 646; Church v. Chicago & Alton Railway, 119 Mo. 203.] This assignment is overruled.

The three other assignments are complaints of the giving of Instructions D, E and F, for defendant. They are as follows:

"D. The court instructs the jury that if you find and believe from the evidence that the condition of the pavement of the street mentioned in evidence was not reasonably safe for pedestrians using the same, by reason of the existence of a hole or depression therein, yet if you further find and believe from the evidence that at the time of the alleged injury, the plaintiff had knowledge of the alleged hole or depression and its dangerous and unsafe condition, if any, or by the exercise of a reasonable degree of care in traveling upon said street could have discovered the alleged hole or depression and the danger thereof, if any, and that at the time of the alleged injury the plaintiff was carelessly and negligently proceeding across said street and failing to use ordinary care in paying attention to where she was walking and that the plaintiff negligently failed to discover said hole or depression and stepped into same and was injured, then the plaintiff cannot recover and your verdict will be for the defendant, the city of Carthage.

"E. In order for the plaintiff to recover any sum whatever in this action, she must establish by a preponderance of the evidence, the facts necessary to a verdict in her favor under these instructions, that is to say, by the greater weight of all the credible evidence in the case, and unless she has so done, your verdict must be for the defendant, the city of Carthage.

"F. You are further instructed that the mere fact that plaintiff was injured by a fall upon defendant's street is no evidence of itself that the defendant was negligent in keeping its streets in a reasonably safe condition. But, on the contrary, the plaintiff must by the evidence, show that the defendant was guilty of negligence, as defined in these instructions, and the burden of proof is upon the plaintiff to establish such negligence by the greater weight of the evidence."

Counsel have taken up these instructions in their briefs in reverse order, and we will do so. In support of their contention that Instruction F is erroneous, counsel refer to Orris v. Chicago R. I. & P. Railroad, 279 Mo. 1; Myers v. City of Independence, 189 S. W. 816; Walker v. Quincy, O. & K. C. Railroad, 178 S. W. 108, and also Walker v. St. Joseph, 231 S. W. (Mo. App.) 65. A distinction between the Orris and Myers cases and the case at bar, is that in each of those cases the injury to the plaintiff was held to be of such a character as of itself to be a material link in the chain of circumstances, tending to show negligence. In the Orris case, the plaintiff's injury was the penetration of his eye by a hot cinder, thrown from the smoke stack of a locomotive engine. The vice of the instruction as pointed out in the opinion by Judge GRAVES was that from the instruction the jury could well draw the conclusion, that they should not consider the character of

the injury to plaintiff in determining the matter of defendant's negligence, and should consider that the term "credible evidence," used in the latter part of the instruction, meant evidence other than evidence as to the injury and character of the injury; that in that particular case the character of the injury itself tended to prove the negligence alleged—that there was a defective spark arrester and defective flues in the engine. The instruction in the Myers case is discussed in the Orris case. In the Myers case the plaintiff, a lineman, was at work and through the negligence of those in charge at the power plant, a current of electricity was turned on, traversing the wires at a time when the plaintiff should have been forewarned, but was not. The character of his injuries showed relation to the alleged cause, the negligent turning on of the electric current, which shocked and burned him. In that case the instruction, held properly refused, would have told the jury the mere fact that the plaintiff was injured, standing alone, did not entitle him to recover anything in the case and that before he was entitled to recover he must prove his case by the greater weight of the credible evidence, and ended with the words: "*And unless he has done so, you must disregard the fact that he received injuries, and return a verdict* in favor of defendant." The instruction given in Walker v. Railroad, supra, is also discussed in the Orris case, at page 13 of the opinion. The particular instruction condemned in that case, which was a suit by a passenger injured in alighting from a train, was as follows: "The mere fact, if it be a fact, that plaintiff was injured, does not entitle her to recover in this case, and you should *not allow such fact to influence you in arriving at a verdict.*" It was pointed out that the defendant owed to the plaintiff the highest degree of care; and the difficulty or rather impossibility of being uninfluenced by the existence of a fact, the existence or non-existence of which was the ultimate subject of inquiry, was also pointed out. The instruction in Walker v. City of St. Joseph, is not set out in the opinion. The chief distinction pointed out in the opinion as to that instruction, was that it left out the words "of itself," ordinarily contained in instructions of the kind under consideration. Instructions similar to the one here under consideration, were given in Moss v. Wells, 249 S. W. 411, and also in Manthey v. Kellerman Contracting Co., 277 S. W. 927. The rulings in those cases were based upon the distinction between a case wherein the character of the injury is of itself a material link in the chain of circumstances tending to show negligence, and a case where the injury is not of such a character.

Counsel for appellant call special attention to the statement in the second sentence of Instruction F: "But on the contrary plaintiff must, by the evidence, show that the defendant was guilty of negligence." They argue that thereby the force of the words "of itself"

which precede, is destroyed; that the jury could well conclude that in using the words "by the evidence" the court meant the jury must exclude consideration of evidence of the fact that the plaintiff fell and was injured, and would have to find evidence independent of the fact that she fell and was injured to determine whether defendant was guilty of negligence. It is further insisted that in instructing that plaintiff "must by the evidence show that defendant was guilty of negligence, as defined in these instructions," the jury would understand there must be proof of such probative force as to well satisfy the jury of such guilt; and there is the further complaint that the court did not in the instructions define "negligence," and therefore the jury was left to form their own conception of its meaning. These claims are not well founded. This instruction must be read with the other instructions, especially plaintiff's Instruction 6. They are not contradictory or inconsistent with one another. It is true no instruction was given defining the word "negligence," but plaintiff's Instruction 6 hypothesizes the facts to be found to make defendant guilty of negligence. By that instruction the court told the jury it was not necessary to prove defendant had actual knowledge of the unsafe and dangerous condition, if any, of the street, but that if they found the street was unsafe and defective by having a hole in its surface, *and plaintiff was injured by reason of the unsafe and dangerous condition,* and that a sufficient length of time had elapsed, between the time when the street became unsafe and dangerous and the time plaintiff claimed to have been injured, for defendant in the exercise of reasonable "care and diligence to have discovered and removed said unsafe and dangerous condition, if any, in said street, then the defendant was guilty of negligence in not discovering and repairing said street." These instructions must be read together, because by reference, Instruction F calls for consideration also of Instruction 6. [Chambers v. Chester, 172 Mo. 461; Gibler v. Terminal Railroad Assn., 203 Mo. 208; Morrow v. Missouri Gas & Electric Service Co., 286 S. W. 106.] When so considered, the jury should have had a fair idea of what constituted negligence on the part of defendant, and have known what they might consider in finding such negligence, if any. Instruction F did not exclude consideration of the evidence that plaintiff was injured, as was done in the instructions in some of the cases referred to, and Instruction 6 included the fact of injury. It is also complained of Instruction F, that it misplaces the burden of proof on the plaintiff as to the issue of contributory negligence, raised in the answer and submitted to the jury in defendant's Instruction D; and, it is urged that the question of burden of proof should not have been mingled with other matters preceding it in Instruction F. Instruction F does not deal with the question of contributory negligence, but deals

solely with the question of defendant's negligence. The burden of proof as to the defense of contributory negligence of the plaintiff is stated in plaintiff's Instruction 5.

As to Instruction E for defendant, the complaint is that it places the burden of proof upon the plaintiff as to the issue of contributory negligence; that it places upon the plaintiff not only the burden of proving those things essential to her recovery, but also the burden of exonerating herself of any act of contributory negligence. It is argued that the instruction should have clearly placed the burden of proof upon the plaintiff as to the facts necessary for a recovery in her favor, and at the same time should have specifically told the jury that the burden of proof was on defendant to show want of ordinary care on the plaintiff's part. Counsel cite Hickman v. Union Electric Light and Power Co., 226 S. W. 576; Reagan v. St. Louis Transit Co., 180 Mo. 127, 128; Meily v. Railroad, 215 Mo. 588. But this instruction must be considered in connection with others. Instruction E does not mention contributory negligence. As we have seen, plaintiff's Instruction 5 laid upon defendant the burden of showing contributory negligence on the part of plaintiff as a defense; and there is this farther observation to be made: the petition alleged that plaintiff was injured "while exercising ordinary care," and plaintiff's Instruction 1, which was the instruction purporting to cover the case, and authorizing a recovery, contained as an element and prerequisite to the right to recover, the finding that plaintiff was injured "while walking with ordinary care and caution on said street." By that instruction plaintiff took upon herself the burden of showing that her injury occurred while she was exercising ordinary care and caution. Having done so, and having also procured her Instruction 5 fixing the burden of proof upon defendant to show contributory negligence on the part of plaintiff, we are unable to see how plaintiff can properly complain of Instruction E for defendant in the particular mentioned.

It is further contended that Instruction E is erroneous for the further reason that it unduly emphasized the scope and amount of evidence from which plaintiff would have to make out her case, by saying the burden must be sustained by all the credible evidence in the case.

Attention is called to Derrington v. Poplar Bluff, 186 S. W. (Mo. App.) 561. In that case an instruction, by its terms, would have made the city liable if the jury found that it failed to use *all* reasonable care and caution to keep the street in repair. It was held that it should not have been emphasized by the use of the word "all," and it was condemned for the further reason that the instruction referred to bridges and sidewalks, when no such things were directly involved. The instruction uses the term "preponderance of the evi-

dence'' and also the term ''greater weight of all the credible evidence.'' No instruction was asked or given telling the jury what was meant by the terms ''preponderance of the evidence,'' or ''weight of the evidence.'' If given, the jury would have been told they were the sole judges of the credibility of the witnesses, and the weight to be given to their testimony. We conclude that the giving of Instruction E does not constitute reversible error.

The complaint against Instruction D is, that it assumed the plaintiff was careless and negligent in proceeding to cross the street, and in failing to use ordinary care in paying attention to where she was walking, and that she negligently failed to discover the hole and stepped into the same, and in that respect was an unnecessary and prejudicial comment upon the evidence, singling out special parts of the testimony, and directing special attention thereto. The instruction does not assume those matters as true, but submits them as questions for the jury. It does not assume that plaintiff was negligent, but submits that as a question upon the evidence. Instruction D follows the language pointed out as appropriate in the opinion in Coffee v. City of Carthage, 186 Mo. l. c. 584.

Finding no reversible error the judgment is affirmed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.