Tennie Nicholson, Appellant, v. Katherine Franciscus and J. M. Franciscus.—40 S. W. (2d) 623.

Division One, June 24, 1931.

*Foristel, Mudd, Blair & Habenicht* and *William L. Bohnenkamp* for appellant.

*Jones, Hocker, Sullivan & Angert* and *Ralph T. Finley* for respondents.

FERGUSON, C.—Action for damages for personal injuries. Plaintiff was employed at the home of the defendants, husband and wife, as cook. She had been in the employ of Mr. and Mrs. Franciscus for several years and had worked as a cook for about a year prior to April 2, 1926, on which date she was injured when the lid or top of a steam cooker was blown off and the hot liquid content of the

cooker was thrown upon plaintiff causing her to suffer severe burns. Plaintiff brought this action for damages in the sum of $15,000.

The petition makes conventional averments as to plaintiff's employment by defendants as a cook; the ownership and control of said steam pressure cooker by defendants; describes the construction, mechanism and proper manner of operation of the cooker; and alleges that the "said pressure cooker and equipment was under the complete control, management and charge of the defendants and the mechanism thereof was known or should have been known to the defendants, but the mechanism thereof and its manner of operation was not known to plaintiff." The petition then sets out the instructions concerning the operation of said cooker alleged to have been given by defendants to plaintiff and states that on the day of the "explosion" plaintiff strictly followed such instructions, but that while she was engaged in "removing the lid or cover of said cooker, through the negligence and carelessness of defendants the lid or cover of said cooker was unexpectedly and in an unusual manner blown off of the cooker and dislodged therefrom, and the hot contents of said cooker, consisting of hot soup, was thereby thrown over the body of the plaintiff and immediately over her chest, breast, stomach, arms and face, and she suffered deep, painful and permanent burns and injuries as a direct result thereof." Continuing the petition alleges that plaintiff "had no knowledge or means of knowing the causes which operated to bring about the extraordinary action of said pressure cooker as aforesaid" and that "all information or knowledge touching the causes which led to the blowing off and dislodging as aforesaid of said lid from said cooker in the manner hereinbefore mentioned was in the possession of the defendants and not in the possession of this plaintiff and not under her control, and she has no means whatsoever of knowing what caused the lid of said cooker to be blown off in such an unusual and violent manner."

Defendants' answer admitted plaintiff's employment as alleged in the petition; denied the other allegations of the petition and averred that plaintiff's injuries were caused by her own negligence; that she "was experienced in operating and handling the pressure cooker referred to" and that she "knew, or by the exercise of ordinary care on her part could have known, that it was not reasonably safe to remove the cover from the cooker until the steam had escaped therefrom; that on the occasion mentioned plaintiff failed and neglected to wait a sufficient length of time for the steam to escape from the cooker, and negligently removed, or attempted to remove, the cover from the cooker before the steam had escaped."

Plaintiff's testimony was that in the course of her employment as cook for the defendants she had operated the steam pressure cooker used in the kitchen of defendants' home continuously for a year;

that the cooker was equipped with a pressure gauge indicating the presence or absence of steam and the amount of steam, if any, in the cooker; that when the food being prepared had been cooked sufficiently the cooker was removed from the heat and the "pet-cock" opened so that steam might escape, and the cooker was then "allowed to stand for twenty minutes or so and until the steam gauge registered zero." Plaintiff testified that she was instructed by the defendants that when the steam gauge registered zero the lid or top could with safety to the operator be removed from the cooker. We quote from appellant's statement of facts set out in her brief: "On the day of her injuries plaintiff was using the cooker, and attempted to remove the top (by removing certain clamps which held the top as against pressure of the steam within), when the cooker exploded and caused the hot liquid food to be thrown over the plaintiff, severely burning her" and "at the time she attempted to remove the top the steam gauge registered zero."

Tillie Kramer and Lena Woobles who were employed as maids in defendants' home at the time plaintiff was injured, testified as witnesses for the defendants. Both testified they were present in the kitchen immediately before and at the time the cooker "exploded." Lena Woobles said that, as she stood at a sink in the kitchen near the cooker which "was on a side table near the sink," she noticed that the gauge on the cooker registered "nine pounds of steam;" that she then went to a table in the same room "to eat my lunch. Miss Kramer was there with me;" that she observed plaintiff starting to open the cooker and "I told her not to open it because it still had steam in it and she said, 'O, today is my day off and I am in a hurry,' and she continued to open it and then she was burned." Tillie Kramer, the other maid present at the time, corroborated the testimony of Lena Woobles, testifying as follows: "It was just about lunch time and Tennie (the plaintiff) had called us to lunch and Lena and I were just sitting down at the table in the kitchen. She took the lid off and the soup flew all over her and the kitchen too. Before she took the lid off, Miss Woobles told her there was still steam in there, and Tennie said it was her day off and she was in a hurry. I heard Miss Woobles tell Tennie that there was still steam in the cooker and Tennie replied it was her day off and she was in a hurry and she went ahead and opened it anyway." No defect was discovered in any of the mechanism of the cooker, nor were any repairs ever made, and there was no testimony of any trouble or difficulty occurring in the operation of the cooker at any time either before or after the date of plaintiff's injury. Lena Woobles testified that she operated the cooker the next day after the accident and continuously thereafter during the following year and never had any trouble of any kind, and the witness Ella Schwinke

stated that she operated the same cooker from September 15, 1927, until sometime in May following "and never had any trouble with it and nothing was wrong with it."

The jury returned a verdict for defendants and from the judgment entered thereon plaintiff appealed.

Appellant assigns as error the giving of defendants' instructions numbered 3 and 4. Instruction Number 3 is as follows:

"*The court instructs the jury that the plaintiff is not entitled to recover in this case merely because she may have been injured while working for the defendants.* The defendants were only required to exercise that degree of care and caution that ordinarily careful and prudent persons under the same or similar circumstances would exercise to keep and maintain the cooker mentioned in the evidence in a reasonably safe condition, and if you find and believe from the evidence in this case that the defendants did exercise that degree of care in this respect, then in that event the plaintiff cannot recover, and your verdict must be for the defendants."

Appellant complains of that part of the foregoing instruction which we have italicized, and says that, under the authority of Orris v. Railway Co., 279 Mo. 1, 214 S. W. 124, and the cases which have followed the Orris case and applied the rule announced in that case, such statement to the jury constitutes error. In the Orris case the plaintiff was injured while working as a locomotive fireman. Plaintiff's left eye was destroyed by the penetration of a burning cinder thrown from the smoke stack of the locomotive. The negligence charged was that the netting of the spark arrester designed and used to prevent the escape of cinders from the smoke stack was defective and allowed unusually large, hot cinders to escape therefrom. The plaintiff "testifies to the size of the cinder which struck him and says that a cinder of that size could not have passed through the netting of the arrester used upon that class of engine if the arrester had been in good condition." The evidence tended to show that when the netting of the spark arrester was in good condition "only small cinders," and "fine cinders" could "escape through the smoke stack;" that they would be "alive" only momentarily and immediately "were out," losing "their heat upon exposure to the air." Complaint was made of that part of an instruction given by the trial court as follows: "the court instructs you that the mere fact that plaintiff was injured while employed by defendant and the fact he has sued to recover damages therefor are of themselves no evidence whatever of defendants' negligence or liability in this case." Having set out the facts, from which statement we have quoted, this court said: "In this particular case the character of the injury is a material link in the chain of circumstances tending to show neg-

ligence. . . . The plaintiff says this particular cinder burned his eye, indicating heat and size. So taking all the facts, the very character of the injury would be a link in the chain of circumstances tending to prove a defective spark arrester, or negligence. The eye being burned indicates heat in the cinder, as well as size. The small cinders lose their heat more rapidly upon exposure to the air. The large cinder carries its heat or burning power longer and further. So *the character of the injury in a case like this, tends to show a larger cinder, and a larger cinder tends to show a defective spark arrester.* In cases like this the jury should consider the injury and its character in an effort to determine negligence. This instruction in our judgment is misleading upon this matter.'' Ordinarily it is not error to tell the jury that the mere fact that plaintiff was injured does not necessarily create liability or warrant an inference of defendant's negligence. The rulings in the Orris case and the cases following it are based upon a distinction between cases wherein the character of the injury is of itself a material link in the chain of circumstances tending to show negligence and cases where the injury is not of such a character. [Sharp v. City of Carthage, 319 Mo. 1028, 5 S. W. (2d) 6.] The rule laid down in the Orris case is followed and applied by the courts only in that class of cases wherein the peculiar characteristics of the injury itself may be a link in the chain of circumstances tending to prove the negligence alleged in the petition. [Manthey v. Kellerman Contracting Co., 311 Mo. 147, 277 S. W. 927; Sharp v. City of Carthage, supra; Schmeer v. Anchor Cold Storage Co. (Mo.), 12 S. W. (2d) 433; Moss v. Wells (Mo.), 249 S. W. 411.] In the instant case there is nothing in the character of the injury sustained by plaintiff tending to show negligence on the part of defendants. The injury itself, as said in Schmeer v. Anchor Cold Storage Co., supra, ''tended no more to show the negligence alleged in the petition than that set up in the answer; it tended to prove neither.'' The facts of this case do not, we think, bring the case within the rule of the Orris case and therefore that part of instruction numbered 3 of which appellant complains is not erroneous.

Defendants' instruction numbered 4, the giving of which appellant assigns as error, is as follows:

''The court instructs the jury that if you find and believe from the evidence in this case that the gauge, pet-cock and other parts of the cooker mentioned in the evidence were at the time of plaintiff's accident and injury in good working condition, then there can be no recovery in this case, and your verdict must be for the defendants.''

Appellant says, that according to her testimony the ''explosion'' occurred while the gauge on the cooker registered zero ''indicating

the steam had gone out of the cooker and hence there was no pressure to cause an explosion;'' that appellant's witness, Rice, testified that if the indicator showed zero the explosion would not have occurred ''if the cooker was in proper working order'' and therefore it was improper to tell the jury, as was done by defendants' instruction number 4, that if they found from the evidence that the cooker and the mechanism thereof was at the time of the accident in good working condition their verdict should be for the defendants; that the instruction is ''confusing, misleading and incorrect'' and ''the terms in good working condition too indefinite.'' Testimony offered by defendants tended to prove that the cooker was at the time of the accident in good working condition, as evidenced by the fact that no defects were discovered at the time, no repairs required or made, and that the cooker was used immediately and continuously thereafter without trouble of any kind whatsoever, and that the accident resulted solely from plaintiff's negligence in attempting to open the cooker before the steam pressure had been entirely released. The pleadings raised the issue and both appellant and respondents introduced evidence tending to show that the cooker and the mechanism thereof was or was not in ''proper order,'' ''in proper working order'' and ''working properly.'' Plaintiff's (appellant's) instruction number 1, covering the whole case and directing a verdict for plaintiff upon the finding of certain enumerated facts, uses substantially the same language which appellant criticizes as being indefinite, confusing and misleading in respondents' instruction number 4, and therefore her complaint in that respect is not well founded. That part of plaintiff's said instruction reads as follows: ''and if you further find from the evidence that when said cooker and the gauge and petcock thereof *were in good condition, and proper working order,* the steam pressure in said cooker would be fully released when said petcock was open and said gauge registered zero, and that it was then safe to remove said lid.'' Under the pleadings and the evidence and when the instruction is read and considered in connection with plaintiff's instruction numbered 1 which fully, fairly and most favorably submitted plaintiff's theory to the jury, the giving of defendants' instruction numbered 4 was not error.

The judgment of the circuit court is affirmed. *Sturgis* and *Hyde,* CC., concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.